# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PAUL M. SEIBERT, THOMAS F.   )
SOLURY, DANA MOLINEAUX,   )
HENRY WORCESTER,   )
STEPHANIE SCHNEPP, JOHN   )
STRONG, JR. AND SCOTT C.   )
ALLEN, individually and on behalf of )
all others similarly situated,   )
  )
              Plaintiffs,   )
     v.   )
  )
NOKIA OF AMERICA   )
CORPORATION, THE BOARD OF   )
DIRECTORS OF NOKIA OF   )
AMERICA CORPORATION,   )
NOKIA 401(K) COMMITTEE and   )
JOHN DOES 1-   )
30.

           Defendants.

**CIVIL ACTION**
**NO.: 2:21-cv-20478**

# PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS COMPLAINT IN PART

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................... 1

II.     STANDARD OF REVIEW IN ERISA ACTIONS .......................................... 3

III.    STATEMENT OF FACTS ................................................................. 6

        A.      Overview of the Plan and the Named Plaintiffs ...................................... 6

        B.      The Totality of the Circumstances Demonstrates that the Plan
                Fiduciaries Failed to Administer the Plan in a Prudent Manner ............. 7

                1.      The Proprietary Series of Target Date Funds in the Plan
                        Chronically and Materially Underperformed its Peers and
                        Benchmarks ..................................................................... 7

IV.     ARGUMENT ................................................................................. 12

        A.      The Plan's Target Date Funds Were Imprudent .................................. 12

                1.      Plaintiffs allege Meaningful Benchmarks to the Nokia TDFs ... 12

                2.      Whether Plaintiffs' Comparators are Meaningful
                        Comparators for the Challenged Plan Funds Is Not
                        Suitable at the Motion to Dismiss Stage ...................................... 16

                3.      Plaintiffs' Allegations of Underperformance Demonstrates
                        Imprudence ..................................................................... 18

                4.      Under the Third Circuit's Holistic Approach Under *Sweda*,
                        Plaintiffs State a Plausible Imprudent Investment Claim
                        When Looking at Excessive Costs AND Underformance
                        of the Nokia TDFs ............................................................. 20

        B.      The Complaint Alleges Sufficient Facts to State a Claim for
                Failure to Monitor .................................................................... 21

V.      CONCLUSION .............................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Allegretti v. Walgreen Co. et al.*,
No. 19-cv-05392 (N.D. Ill. Dec. 6, 2019)................................................9, 13

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
579 F. Supp. 3d 1133 (N.D. Cal. 2022) ........................................ 14, 15

*Baumeister v. Exelon Corp.*,
2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) ................................. 18, 19

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .................................................. 4, 5, 17

*Brotherston v. Putnam Invs., LLC*,
907 F.3d 17 (1st Cir. 2018)....................................................2, 14

*Brown-Davis v. Walgreen Co.*,
2020 WL 8921399 (N.D. Ill.) ..................................................2, 14

*Cassell v. Vanderbilt Univ.*,
285 F.Supp.3d 1056 (M.D. Tenn. 2018)........................................17

*Cryer v. Franklin Templeton Resources Inc.*,
2017 WL 818788 (N.D. Cal. Jan. 17, 2017).....................................17

*Davis v. Magna Int'l of America, Inc.*,
2021 WL 1212579 (E.D. Mich. March 31, 2021) .................................17

*Davis, et al. v. Washington Univ.*,
960 F.3d 478 (8th Cir. 2020) .....................................................5

*Dover v. Yanfeng US Auto. Interior Sys. I LLC*,
563 F. Supp. 3d 678 (E.D. Mich. 2021)...........................................2, 14

ii

*Gaines v. BDO USA, LLP*,
No. 22 C 1878, 2023 WL 2587811 (N.D. Ill. Mar. 21, 2023) ............... 2, 13, 15, 17

*Garcia, et al. v. Alticor, Inc.*
2021 WL 5537520, at *3 (W.D. Mich. Aug. 9, 2021) ................................................3

*Goldenberg v. Indel, Inc.*,
741 F. Supp. 2d 618 (D.N.J. 2010) .........................................................................18

*Henderson v. Emory Univ.*,
252 F.Supp.3d 1344 (N.D. Ga. 2017) .......................................................................5

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) ...............................................................................................5, 6

*Karg v. Transamerica Corp.*,
2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) .......................................................22

*Lauderdale et al. v. NFP Ret., Inc. et al.*
2021 WL 3828646 (C.D. Cal. Aug. 18, 2021) .........................................................20

*Main v. Am. Airlines, Inc.*,
248 F.Supp.3d 786 (N.D. Tex. 2017) ........................................................................5

*McCool v. AHS Management Company, Inc.*,
2021 WL 826756 (M.D. Tenn. March 4, 2021) .......................................................17

*McNeilly et al. v. Spectrum Health Systems, et al.*,
No. 1:20-cv-870 (W.D. Mich. July 16, 2021) ..........................................................19

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ...................................................................................15

*Miller v. Autozone, Inc.*,
2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020) ....................................................18

*Nicolas v. Trustees of Princeton Univ.*,
No. 17- 3695, 2017 WL 4455897 (D.N.J. Sept. 25, 2017) ......................................17

*Nunez v. B. Braun Med., Inc.*,
2023 WL 5339620 (E.D. Pa. Aug. 18, 2023) ..........................................................16

*Pension Ben Guar. Corp. ex rel. St. Vincent Catholic Medical Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
712 F.3d 705 (2d Cir. 2013).................................................................................5

*Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*,
2020 WL 1531870 (E.D.Pa. Mar. 31, 2020)................................................ 5, 16, 21

*Rodriguez v. Hy-Vee, Inc.*,
2022 WL 16648825 (S.D. Iowa Oct. 21, 2022)........................................................3

*In re Schering-Plough ERISA Litig.*,
2010 WL 2667414 (D.N.J. June 29, 2010)............................................................21

*Silva v. Evonik Corp.*,
2020 WL 12574912 (D.N.J. Dec. 30, 2020) ..................................... 5, 17, 18, 21

*Snyder v. UnitedHealth Grp., Inc.*,
No. CV 21-1049 (JRT/BRT), 2021 WL 5745852 (D. Minn. Dec. 2, 2021) .......2, 14

*Sweda v. Univ. of Pennsylvania*,
923 F.3d 320 (3d Cir. 2019)....................................................................*Passim*

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015).................................................................................6

*Tibble v. Edison Int'l*,
843 F.3d at 1198 (*Tibble IV,*)................................................................19

## Statutes

Fed. R. Civ. P. 12(b)(6).................................................................................3

## Other Sources

The Employee Retirement Income Security Act of 1974................................*Passim*

Plaintiffs Paul M. Seibert, Thomas F. Solury, Dana Molineaux, Henry Worcester, Stephanie Schnepp, John Strong, Jr. and Scott C. Allen (collectively, the "Plaintiffs"), by and through their attorneys, respectfully submit this opposition to Defendants'[1] Motion to Dismiss in Part. [2]

## I.      INTRODUCTION

This Court already upheld Plaintiffs' claim that Defendants breached their fiduciary duties with regard to the Nokia Savings/401(k) Plan's (the "Plan") exorbitant recordkeeping costs. (ECF 54, 55). As for Plaintiffs' imprudent investment claim, this Court granted Defendants' motion to dismiss without prejudice with leave to amend. (ECF 54, 55). As such, Defendants' motion only addresses Plaintiffs' imprudent investment claim.

The gravamen of Plaintiffs' imprudent investment claim is that Defendants breached their fiduciary duties by utilizing their own poorly created expensive investment funds (hereinafter "Nokia Target Date Series" or "Nokia TDFs") which underperformed compared to their commercial alternatives, thus costing the Plan millions of dollars due to lower net investment returns. ¶ 112. The Defendants'

---

[1] "Defendants" refers to Nokia of America Corporation ("Nokia"), The Board of Directors of Nokia of America Corporation (the "Board"), Nokia 401(k) Committee(the "Committee"), and John Does 1-30.

[2] Defendants' Brief In Support of Motion to Dismiss Plaintiffs' First Amended Complaint is referred to herein as "Defs.' Memo."  All references to "¶" or "FAC" or "Amended Complaint" are to the First Amended Complaint (ECF No. 60).

choice to create their own suite of underperforming target date funds is particularly baffling given that with such a large amount invested in the target date series, the Plan would have been able to choose virtually any available target date series for the Plan. ¶ 96.

Plaintiffs have amended the Complaint to include meaningful benchmarks to the Nokia TDFs that the Court found to be lacking in the original complaint. *See* FAC, (ECF 54, 55). In particular, the T.Rowe Price Retirement and the American Funds target date suite are meaningful benchmarks for the underperforming Plan funds because Morningstar has placed each Plan fund and its comparators in the same peer-group category of funds, which share core similarities. *See Gaines v. BDO USA, LLP*, No. 22 C 1878, 2023 WL 2587811, at *5 (N.D. Ill. Mar. 21, 2023) (accepting comparators based on shared Morningstar fund categories and Morningstar benchmark indices.); *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 687 (E.D. Mich. 2021) (accepting comparators based on shared Morningstar fund categories and Morningstar benchmark indices); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (approving expert selection as a benchmark an index fund assigned to the same Morningstar category as the plan fund); *Brown-Davis*, 2020 WL 8921399, at *1 (accepting plaintiffs' comparison of plan funds to "benchmark indexes [including] the …Morningstar Lifetime Moderate

Index"); *Snyder v. UnitedHealth Grp., Inc.*, No. CV 21-1049 (JRT/BRT), 2021 WL 5745852, (D. Minn. Dec. 2, 2021) (same).

Rather than addressing legal arguments that cut against them, Defendants get side-tracked engaging in improper and irrelevant attacks. For instance, they mischaracterize Plaintiffs' claims as "cookie-cutter" and "generic," and attack Plaintiffs' firm for filing similar cases. (The defendants fail to mention that the vast majority of those cases have survived motions to dismiss based on the merits of those cases.) This is not the first time counsel for Defendants have leveled such unwarranted accusations against Plaintiffs' counsel. Judge Maloney in *Garcia, et al. v. Alticor, Inc. et al.* aptly noted, while denying defendants' (represented by the same defense counsel here) motion to dismiss an analogous case, that "[a]t the outset, the Court rejects Defendants' argument that because Plaintiffs have retained counsel that have filed factually similar cases, their allegations are so generic that they cannot survive a motion to dismiss. There is no rule against hiring counsel that specialize in one cause of action or type of lawsuit, and the Court declines to dismiss the complaint on this ground alone." *Id.* 2021 WL 5537520, at *3 (W.D. Mich. Aug. 9, 2021).

Moreover, "defense counsel are obviously following a 'playbook,' too, in which … they indiscriminately file motions to dismiss in every case…." *Rodriguez v. Hy-Vee, Inc.*, 2022 WL 16648825, at * 10 (S.D. Iowa Oct. 21, 2022). Here, when

looking simply at the pleadings and applying the correct standard of review, the Defendants' Motion to Dismiss should be denied based on the merits of Plaintiffs' well plead Amended Complaint.

## II.   STANDARD OF REVIEW IN ERISA ACTIONS

When considering a motion to dismiss under Rule 12(b)(6), a court takes the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiffs. *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 325 (3d Cir. 2019) (noting "we apply the same standard as the district court and construe the complaint 'in the light most favorable to the plaintiff.'") (citation omitted). Of particular importance here, in cases alleging imprudent fiduciary process, the Third Circuit agrees with the Eighth Circuit's holding in *Braden* that "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party." *Sweda*, 923 F.3d at 326 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009)).

The reason is simple. Plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598. The Court must employ a "holistic approach" and "remain mindful that '[m]any allegations concerning fiduciary conduct . . . are inherently factual question[s]." *Silva v. Evonik Corp.*, 2020 WL 12574912, at *5

(D.N.J. Dec. 30, 2020) (citation omitted); *see also Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870, at *3 (E.D.Pa. Mar. 31, 2020) ("We must … complete a 'careful and holistic evaluation' of a complaint alleging violations of the Act under a totality of the circumstances approach.").

Courts recognize that in cases alleging imprudent fiduciary process, "a claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss—even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary—if the complaint alleges facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Henderson v. Emory Univ.*, 252 F.Supp.3d 1344, 1325-6 (N.D. Ga. 2017) (quoting *Pension Ben Guar. Corp. ex rel. St. Vincent Catholic Medical Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)); *see also Main v. Am. Airlines, Inc.*, 248 F.Supp.3d 786, 792 (N.D. Tex. 2017) (quoting *Braden*, 588 F.3d at 596) (acknowledging same).

The Supreme Court's recent decision in *Hughes v. Northwestern Univ.*, reinforces the above pleading standard. *Hughes* vacated a decision that was at odds with the Third and Eighth Circuit's decisions in *Sweda* and *Davis, et al. v. Washington U. See* Br. for the United States as Amicus Curiae at 17, *Hughes v.*

*Northwestern Univ.*, No. 19-1401 (May 25, 2021)[3] ("the decision below conflicts with decisions of the Third and Eighth Circuits, both of which have held that very similar complaints—alleging that defendants offered retail-class investment shares instead of available institutional-class shares, and paid excessive recordkeeping fees in universities' Section 403(b) plans— stated claims for relief under ERISA.").

Additionally, *Hughes* implores lower courts to apply the teachings of *Tibble v. Edison Int'l*, 575 U.S. 523, 529-530 (2015 where the Supreme Court "interpreted ERISA's duty of prudence in light of the common law of trusts and determined that 'a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones.'" *Hughes v. Nw. Univ.*, 595 U.S. 170, 175 (2022)  (quoting *Tibble*, 575 U.S. at 530).  This duty includes controlling plan costs. *See* Complaint, ¶ 4 (citing Uniform Prudent Investor Act, § 7).  Lastly, the dicta in *Hughes* that lower courts must give consideration of "reasonable judgments a fiduciary may make" at best suggests the scope of "judgments" ought to be taken up at summary judgment.

## III.   STATEMENT OF FACTS

### A. Overview of the Plan and the Named Plaintiffs

At all times during the Class Period (December 13, 2015 through the date of judgment), the Plan had at least $6.3 billion dollars in assets under management.  ¶

---

[3]https://www.supremecourt.gov/DocketPDF/19/19-1401/180105/20210525160954238_19-1401%20Hughes%20-%20US%20invitation%20brief%20final.pdf

9.   At the end of 2020 and 2019, the Plan had over $8.5 billion dollars and $7.9 billion dollars respectively, in assets under management. *Id.*  As of the end of 2020, the Plan had 29,277 participants with account balances.  ¶ 39.

### B. The Totality of the Circumstances Demonstrates that the Plan Fiduciaries Failed to Administer the Plan in a Prudent Manner

During the Class Period, Defendants failed to engage in a prudent process in evaluating investment management fees.  ¶ 68.  In some cases, expense ratios for the Plan's funds were ***six basis points*** above the ICI Median (in the case of Retirement Date 2040 Fund) in the same category. ¶ 69.  The high cost of the Plan's funds is also evident when comparing the Plan's funds to the average fees of funds in similarly-sized plans.  ¶ 69-70.  The high fees of the target date fund suite were also not justified by their investment returns as they failed to perform well compared to their peers thereby causing significant losses to the Plan and its participants. ¶ 72.

### 1. The Proprietary Series of Target Date Funds in the Plan Chronically and Materially Underperformed its Peers and Benchmarks.

At all relevant times, Defendants maintained the authority to exercise control over the Plan's investments, including the Plan's target date fund investment options, which included a proprietary Target Date Series. This target date series does not have any ticker symbol or a brand name associated with it strongly suggesting that these funds were created by the Plan or were unique to the Plan, its Recordkeeper and/or the Plan's advisor. ¶ 94-95.  In 2020, the Plan had more than

$8 billion dollars in assets under management. 2020 Auditor Report at 3. With such a large amount invested, the Plan would have been able to choose virtually any available target date series for the Plan. ¶ 96. The Proprietary Target Date Series consistently materially underperformed industry-accepted benchmarks for target date funds used by investment professionals. ¶ 99.

The Proprietary Target Date Series can be compared to various similar target date funds ("Comparator Funds") and relevant indexes ("Comparator Indexes") as benchmarks. Suitable Comparator funds include the T.Rowe Price Retirement target date suite and the American Funds target date suite. These two target date suites are suitable Comparator Funds to the Proprietary Target Date Series because Morningstar, the most well respected and accepted financial industry database places the Comparator funds in the Morningstar Lifetime Moderate Index category along with more than approximately 200 other commercially available target date funds. Since the Proprietary Target Date Series are not publicly available, they're not categorized by Morningstar as performance information is not made available to the public. However, the Morningstar Lifetime Moderate Index is the index used by virtually all target date series for large retirement plans such as the Plan and would be applicable to the Proprietary Target Date Series. In addition, the Lifetime Moderate Index is accepted by financial industry professionals as the appropriate target date benchmark for large plans such as the Plan. ¶ 100.

A Morningstar Category is assigned by placing funds [*e.g.*, T.Rowe Price Retirement target date suite and the American Funds target date suite etc.] into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years. Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al*., No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019). The analysis in *Allegretti* similarly deals with the Morningstar Lifetime Moderate Index category. *Id.* ¶ 101. Further, Morningstar itself states that it created its categories "to help investors make meaningful comparisons between mutual funds. Morningstar found that the investment objective listed on a fund's prospectus often did not adequately explain how the fund was actually invested." Morningstar Category Classification, 31 March 2022 ("Morningstar Classifier")[4] at page 5. The Morningstar Classifier goes on to state that "[f]or example, many funds claimed to be seeking "growth," but some of those were investing in established blue-chip companies while others were investing in small-cap companies." *Id.* ¶ 102. A prudent fiduciary should have used some or all of these benchmarks, or substantially

---

[4] Available at the following web address: https://advisor.morningstar.com/Enterprise/VTC/MorningstarCategoryClassificationforFunds_April2022.pdf.

similar benchmarks, to evaluate the performance of the Proprietary Target Date Series as early as the inception of the Class Period, or sooner, and on an ongoing basis thereafter. ¶ 103.

The performance of the Proprietary Target Date Series lagged behind the performance of the applicable Comparator Funds and Index for many years clearly showing that it was an imprudent choice for the Plan. ¶ 104. The three-year average performance, net of fees, as early as 2018, which analyzes data prior to the class period in order to provide a three year average, shows that the Proprietary Target Date Series has been historically an imprudent selection. Using target date 2040 as a sample target date year[5], it's clear that out of more than 200 Morningstar peer funds in the LT Mod target date group, the Proprietary Target Date Series was mediocre, at best. The Amended Complaint looks at two target date series from this Morningstar peer group, namely T.Rowe Price Retirement 2040 (TRRDX) and the American Funds 2040 Target Retirement R6 (RFGTX) ("collectively the "Two Comparator Funds") as exemplars. ¶ 105.

As can be seen from the graph below, comparing the performance of the Two Comparator Funds and their performance to the appropriate Morningstar Index, Morningstar Lifetime Moderate Index, MSAAM40M, ("Morningstar Index"), it's

---

[5] A complete analysis for each target date year beginning in 2025 to 2060 is attached the FAC as Appendix "A."

clear the Proprietary Target Date Series performed poorly as compared to its peers and generally below its Morningstar Index on a 3 year rolling average while the comparator funds performed well above, as demonstrated in the graph below:



¶ 106.

As can be seen in the chart above, the 2040 fund of the Proprietary Target Date Series failed to perform better than half of the commercially available target date funds. This evidences a clear lack of a prudent process in selecting and managing the funds in the Plan. Had the Plan fiduciaries utilized a process, in the

best interest of plan participants, as required by ERISA, they would have realized the Proprietary Target Date Series should not have been selected for the Plan or at the very least removed by the start of the Class Period. Similar results are seen for the remaining target date years in the Plan as demonstrated in Appendix "A" of the FAC. ¶ 107.

The fact that the 2040 fund of the Proprietary Target Date Series had such a low 3-year return, especially at the end of 2018, when compared to the nearly 200 funds in this Morningstar category suggests that the 2040 fund was well below its benchmarks for years prior and should not have been selected for inclusion in the Plan or at least should have been removed by the start of the Class Period. ¶ 110. Failure to do so cost the Plan and its participants millions of dollars. ¶ 112.

## IV.   ARGUMENT

### A. The Plan's Target Date Funds Were Imprudent

#### 1.  Plaintiffs allege Meaningful Benchmarks to the Nokia TDFs

Defendants challenge Plaintiffs' selection of the comparators for the Nokia TDFs. Defendants' arguments fail for several reasons. Contrary to Defendants' argument, the Amended Complaint does in fact discuss why each comparator is a sensible selection. The T.Rowe Price Retirement and the American Funds target date suite are suitable comparator funds to the Nokia target date suite because Morningstar, the most well respected and accepted financial industry fund database

places the comparator funds in the Morningstar Lifetime Moderate Index category. A Morningstar Category is assigned by placing funds [*e.g.*, , T.Rowe Price Retirement I target date funds and the American Funds target date suite etc.] into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years.  Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al*., No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019). The analysis in *Allegretti* similarly deals with the Morningstar Lifetime Moderate Index category. *Id.*

Here, the comparator funds are meaningful benchmarks for the underperforming Plan funds because Morningstar has placed each Plan fund and its comparators in the same peer-group category of funds, which share core similarities. *See Gaines v. BDO USA, LLP*, No. 22 C 1878, 2023 WL 2587811, at *5 (N.D. Ill. Mar. 21, 2023) (accepting comparators based on shared Morningstar fund categories and Morningstar benchmark indices.); *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 687 (E.D. Mich. 2021) (accepting comparators based on shared Morningstar fund categories and Morningstar benchmark indices); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (approving expert

selection as a benchmark an index fund assigned to the same Morningstar category as the plan fund); *Brown-Davis*, 2020 WL 8921399, at *1 (accepting plaintiffs' comparison of plan funds to "benchmark indexes [including] the …Morningstar Lifetime Moderate Index"); *Snyder v. UnitedHealth Grp., Inc.*, No. CV 21-1049 (JRT/BRT), 2021 WL 5745852, (D. Minn. Dec. 2, 2021) (same). Here, Plaintiffs selected appropriate Comparators with a reasonable basis for being used here.

Defendants' reliance on the out-of-circuit district court opinion in *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1154 (N.D. Cal. 2022) is of no moment. In *Anderson,* the challenged TDF included "Non-Traditional Investment" class, such as hedge funds, private equity and commodities, whereas the comparator TDFs had traditional investments. *Id.* Therefore, the court found that the comparator funds were not a meaningful comparison to the challenged TDF which included "Non-Traditional Investments." Here, according to Defendants' own brief, the Nokia TDFs and the comparator TDFs all included traditional investments of equities and bonds. Defs' Memo. at 14-15. Defendants instead point to minor variations between the percent of allegations of U.S. equities and non-U.S. equities and minor variations in allocations of bonds try to create the illusion that the TDFs are not comparable. *Id.* Here, these minor differences in allocations of the same asset classes are simply not comparable to the facts in *Anderson* where the plaintiffs were trying to compare traditional investment asset classes with non-

14

traditional asset classes. There will always be minor differences when comparing two funds, but the differences alleged by Defendants do not create material differences in "risks, aims and rewards" as Defendants allege. Defs.' Memo at 12.

Defendants' reference to *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018) regarding differing target dates funds also does not apply to Plaintiffs' allegations. The facts in this case differ from those in *Meiners* because those plaintiffs' primary claims centered on a comparison between arguably different funds. Here, as explained above, the comparator funds are meaningful benchmarks for the underperforming Plan funds because Morningstar has placed each Plan fund and its comparators in the same peer-group category of funds, which share core similarities. *See Gaines v. BDO USA, LLP*, at *5.

Additionally, Defendants attack Plaintiffs' counsel by pointing out that Plaintiffs' counsel represented plaintiffs in three other cases where plaintiffs argued that one of the comparator TDF series, the T. Rowe Price TDFs, was imprudent. This attack against Plaintiffs' counsel has nothing to do with whether the Defendant fiduciaries here were imprudent in including the Nokia TDFs in this Plan. Furthermore, Plaintiffs do not "extol the T. Rowe Price funds as a model of prudence" as Defendants argue. Defs.' Memo. at 11. Plaintiffs simply offer the T. Rowe Price TDF series as a meaningful comparator that significantly outperformed Nokia TDF. Defendants also conveniently failed to mention that in the two cases in

15

this circuit, *Nunez v B. Braun Med. Inc.*, and *Pinnell v. Teva Pharms* the courts did NOT grant defendants' motions to dismiss and upheld Plaintiffs' use of comparators to the T. Rowe Price TDFs. See *Nunez v. B. Braun Med., Inc.*, 2023 WL 5339620, at *1 (E.D. Pa. Aug. 18, 2023) ("The plaintiffs' duty-of-prudence claim survived the committee's motion to dismiss and subsequently its motion for summary judgment"). *See also Pinnell v. Teva Pharms. USA, Inc.*, 2020 WL 1531870, at *5 (E.D. Pa. Mar. 31, 2020) ("In *Sweda*, our Court of Appeals emphasized the importance of a complaint's inclusion of 'specific comparisons between returns on Plan investment options and readily available alternatives;' the Teva Plan participants plausibly plead numerous and specific factual allegations comparing the Plan's investment options to similar lower-cost alternatives.") If anything, the fact that the Nokia TDFs were significantly outperformed by the T. Rowe Price TDFs, which were successfully challenged in other cases, shows just how imprudent of an investment the Nokia TDFs are and were.

> ## 2. Whether Plaintiffs' Comparators are Meaningful Comparators for the Challenged Plan Funds Is Not Suitable at the Motion to Dismiss Stage

Defendants' arguments that Plaintiffs have not alleged apt comparators for four of the Plan's challenged funds, Defs.' Mem. at 14-21, fails for other reasons. As explained above, the comparator funds are meaningful benchmarks for the underperforming Plan funds because Morningstar has placed each Plan fund and its

comparators in the same peer-group category of funds, which share core similarities. *See Gaines v. BDO USA, LLP*, at \*5. Thus, Defendants really take issue with Plaintiffs' choice of comparators, but the argument raises issues of fact that require assessment on a more developed record.  *See Silva v. Evonik Corp.*, 2020 WL 12574912, at \*6 (D.N.J. Dec. 30, 2020) (quoting *Nicolas v. Trustees of Princeton Univ.*, No. 17- 3695, 2017 WL 4455897, at \*5 (D.N.J. Sept. 25, 2017)) (an inquiry into 'whether the alternative funds Plaintiff[s] suggest[ ] are apt comparisons' is a question of fact unsuitable for resolution on a motion to dismiss.); *Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2021 WL 1212579, at \*6 (E.D. Mich. Mar. 31, 2021) (quoting *Braden*, 588 F.3d at 598) ("[t]he Court finds *Braden* instructive in recognizing that '[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'"); *McCool v. AHS Mgmt. Co., Inc.*, No. 3:19-CV-01158, 2021 WL 826756, at \*5 (M.D. Tenn. Mar. 4, 2021) ("the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss"); *Cassell v. Vanderbilt Univ.*, 285 F.Supp.3d 1056, 1067 (M.D. Tenn. 2018) (same); *Cryer v. Franklin Templeton Resources Inc.*, 2017 WL 818788, at \*4 (N.D. Cal. Jan. 17, 2017) (same).  Similarly, in *Miller v. Autozone, Inc.*, 2020 WL 6479564, at \*8-10 (W.D. Tenn. Sept. 18, 2020) defendants argued "[p]laintiffs' claim must fail because it is premised on inappropriate comparison of actively managed funds

17

to passively managed Vanguard index funds." 2020 WL 6479564, at * 8.  AutoZone, like Defendants here argued "the actively managed GoalMaker funds do not employ similar operations or investment strategies to passively managed Vanguard funds." *Id*.  The court rejected this argument.  *Id*.

### 3.  Plaintiffs' Allegations of Underperformance Demonstrates Imprudence

Defendants cite the out-of-circuit district court opinion in, *Baumeister v. Exelon Corp.,* 2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) for the position that the Nokia TDFs did not underperform enough to show imprudence when compared to the Comparator Funds. This argument is misguided for several reasons. First, as described above, this single out-of-circuit district court opinion is not in line with the Third Circuit's position that this type of fact-finding determination is not proper for a motion to dismiss. As this district court held in *Evonik,* "there is no 'categorical benchmark' to determine whether fees are excessive." *Evonik Corp.*, 2020 WL 12574912, at *6 (D.N.J. Dec. 30, 2020) citing *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 636 (D.N.J. 2010). The court went on to say "[i]ndeed, even relatively minor cost savings can add up significantly over the length of an investment because participants lose 'not only the money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over

time.'" *Id.* quoting *Tibble IV*, 843 F.3d at 1198. Although the court was discussing investment fees, the same logic applies to investment performance.

Second, even looking at the holding of *Exelon Corp.,* the underperformance of the challenged Nokia TDFs compared to the comparators here is more significant than was the case in *Exelon Corp*. In *Exelon Corp,* the challenged fund performed in the middle of the pack of the comparator funds. See *Exelon Corp.*, 2023 WL 6388064, at *5 (N.D. Ill. Sept. 29, 2023) ("For funds with a target retirement date in 2020 or earlier, the Exelon TDFs were in the middle of the pack; three of the six comparators had returns lower than Exelon, net of fees.") Here, as can be seen in the chart in the complaint, the Nokia TDFs *never* outperformed the comparator funds. ¶ 106. See also Appendix A. Furthermore, the chart shows that the Nokia TDFs were *never* in the top half of the of the broader TDF market when looking at the Morningstar Index. *Id.* The underperformance of the Nokia TDFs alleged here is much more significant than was the case in *Exelon Corp.*

Defendants further mischaracterize Plaintiffs' allegations as hindsight-based when in fact the Amended Complaint alleges the Defendants neglected to act on information available to them at the time of the underperformance.  The court in *McNeilly et al. v. Spectrum Health Systems*, *et al.*, No. 1:20-cv-870 (W.D. Mich. July 16, 2021) (Motion to Dismiss Order) (Attached to Gyandoh Decl. as Ex. 1) held, when "Plaintiffs bring allegations that the Committee failed *for years* to

perform sufficient reviews or investigations into the Plan's performance" allegations can survive a motion to dismiss because "it is plausible that Defendants had access to ample performance data at various points throughout the relevant period, and Plaintiffs' allegation is that Defendants did not adequately consider that information." *Id*. at p. 13. (Emphasis in the original). Plaintiffs allege the Nokia target date funds underperformed throughout the Class Period, which Defendants should have been aware of.

Defendants cite the out-of-circuit district court opinions such as *Lauderdale et al. v. NFP Ret., Inc. et al.* 2021 WL 3828646, at *6 (C.D. Cal. Aug. 18, 2021) for the position that in hindsight, it is always possible to show underperformance to other funds; however, unlike in *NFP*, here, Plaintiffs allege that the Defendants neglected to act on information available to them at the time of the underperformance. Therefore, Plaintiffs state a plausible claim and Defendants' Motion should be denied.

**4. Under the Third Circuit's Holistic Approach Under *Sweda*, Plaintiffs State a Plausible Imprudent Investment Claim When Looking at Excessive Costs AND Underperformance of the Nokia TDFs.**

Defendants argue Plaintiffs' excessive cost claim should be dismissed because Plaintiffs did not change the excessive cost allegations from the original complaint. Defs'. Memo. at 29. Defendants' argument ignores the holistic analysis that is required under *Sweda*. The Third Circuit utilizes a 'holistic' approach, considering

20

the 'totality of the circumstances." *Sweda* at 331-32. A court must employ a "holistic approach" and "remain mindful that '[m]any allegations concerning fiduciary conduct . . . are inherently factual question[s]." *Silva v. Evonik Corp.*, 2020 U.S. Dist. LEXIS 250206, at *11-12 (D.N.J. Dec. 30, 2020) (citation omitted); *see also Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870, at *3 (E.D.Pa. Mar. 31, 2020) ("We must … complete a 'careful and holistic evaluation' of a complaint alleging violations of the Act under a totality of the circumstances approach.").

Here, there is not a separate excessive cost claim and performance claim as the Defendants attempt to imply. There is only the imprudent investment claim. Using the Third Circuit's holistic approach, the new allegation regarding the Nokia TDFs underperformance must be considered in combination with the Nokia's TDFs excessive costs.

## B. The Complaint Alleges Sufficient Facts to State a Claim for Failure to Monitor

The fiduciary duty to monitor is firmly entrenched under ERISA.   An appointing fiduciary is required to evaluate an appointee's performance at regular intervals to ensure that the plan is being properly managed in compliance with the plan terms and in accordance with ERISA.  *See In re Schering-Plough ERISA Litig.*, 2010 WL 2667414, at *8  (D.N.J. June 29, 2010) ("Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty

21

to monitor appointees ... includ[ing the] duty to monitor appointees' actions."). Like the defendants in *Karg v. Transamerica Corp.*, Defendants argue Plaintiffs' failure to monitor claim fails because the underlying imprudent management claim fails. Defs.' Mem. at 19-20. This is of no moment, because Plaintiffs "have pleaded the underlying fiduciary breach necessary to support their failure to monitor claim." *Karg v. Transamerica Corp.*, 2019 WL 3938471, at * 9 (N.D. Iowa Aug. 20, 2019).

## V.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety or, alternatively, grant Plaintiffs' an opportunity to amend the FAC.

Dated:  December 28, 2023          **CAPOZZI ADLER, P.C.**

/s/ Mark K. Gyandoh          .
Mark K. Gyandoh, Esquire
N.J. Bar ID: 025622001
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
Phone: (610) 890-0200
Fax: (717) 233-4103

/s/ Donald R. Reavey          .
**CAPOZZI ADLER, P.C.**
Donald R. Reavey, Esquire
(*Admitted Pro Hac Vice*)
PA Attorney ID #82498
2933 North Front Street
Harrisburg, PA 17110
 Email: donr@capozziadler.com

Phone: (717) 233-4101
Fax: (717) 233-4103

*Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 28, 2023, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: */s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esq.