# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAUL M. SEIBERT, THOMAS F. SOLURY, DANA MOLINEAUX, HENRY WORCESTER, STEPHANIE SCHNEPP, JOHN STRONG, JR. and SCOTT C. ALLEN, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-20478-JKS-AME  CLASS ACTION |
| Plaintiffs, |  |
| v. |  |
| NOKIA OF AMERICA CORPORATION, THE BOARD OF DIRECTORS OF NOKIA OF AMERICA CORPORATION, NOKIA 401(K) COMMITTEE and JOHN DOES 1-30, |  |
| Defendants. |  |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT IN PART

**JACKSON LEWIS P.C.**
Howard Shapiro, Esq. (admitted *pro hac vice*)
Michael E. Holzapfel, Esq.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 08922
Telephone: (908) 795-5200
Email:   howard.shapiro@jacksonlewis.com
         michael.holzapfel@jacksonlewis.com
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.    INTRODUCTION. ............................................................................................... 1

II.    LEGAL ARGUMENT .......................................................................................... 2

    A.    Judge Salas's Opinion is Controlling Law ............................................. 2

    B.    Plaintiffs Misstate the Standard of Review ............................................ 3

    C.    The FAC Fails to Proffer a Meaningful Benchmark .............................. 5

        1.    The MLMI is not a meaningful benchmark ................................ 6

        2.    The American Funds and T. Rowe Price TDFs are not meaningful benchmarks ..................................... 12

    D.    The Investment Claim is Hindsight-Based and Focuses Improperly on Isolated Periods of Performance ............................................................................................ 14

    E.    The Court Should Dismiss the Investment Claim With Prejudice. ............................................................................... 15

III.    CONCLUSION ................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) ..............................................................................11

*Baumeister v. Exelon Corp.*,
    2023 U.S. Dist. LEXIS 175326 (N.D. Ill. Sep. 29, 2023) ................................14

*Breen v. Callagy Law PC*,
    851 F. App'x 302 (3d Cir. 2021) ......................................................................15

*Brotherston v. Putnam Invs. LLC*,
    907 F.3d 17 (1st Cir. 2018) ...........................................................................9, 10

*Brown-Davis v. Walgreen Co.*,
    2020 U.S. Dist. LEXIS 252317 (N.D. Ill. Mar. 16, 2020) ..........................10, 11

*Daramy v. AG of the United States*,
    365 F. App'x 351 (3d Cir. 2010) ........................................................................2

*Dover v. Yanfeng US Auto. Interior Sys. I LLC*,
    563 F. Supp. 3d 678 (E.D. Mich. 2021) ............................................................11

*Gaines v. BDO USA, LLP*,
    2023 U.S. Dist. LEXIS 47350 (N.D. Ill. Mar. 21, 2023) ........................9, 10, 11

*Hall v. Capital One Fin. Corp.*,
    2023 U.S. Dist. LEXIS 35391 (E.D. Va. Mar. 1, 2023) ......................................6

*Hughes v. Northwestern Univ.*,
    142 S. Ct. 737 (2022) .....................................................................................3, 4

*Johnson v. Parker-Hannifin*,
    2023 U.S. Dist. LEXIS 214747 (N.D. Ohio Dec. 4, 2023) ..................5, 6, 7, 11

*Matney v. Barrick Gold of N. Am.*,
    80 F.4th 1136 (10th Cir. 2023) ...........................................................................7

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) .............................................................................13

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ..................................................................................14

*Seibert v. Nokia of Am. Corp.*,
   2023 U.S. Dist. LEXIS 137621 (D.N.J. Aug. 8, 2023) ..........................................1

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ..............................................................11, 12, 14

*Snyder v. UnitedHealth Grp., Inc.*,
   2021 U.S. Dist. LEXIS 230878 (D. Minn. Dec. 2, 2021) ......................10, 11, 14

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) ...............................................................................3, 4

*Swift v. Pandey*,
   2013 U.S. Dist. LEXIS 162029 (D.N.J. Nov. 13, 2013) ......................................9

*Tullgren v. Hamilton*,
   2023 U.S. Dist. LEXIS 34462 (E.D. Va. Mar. 1, 2023) .......................................6

*Young Cho v. Prudential Ins. Co. of Am.*,
   2021 U.S. Dist. LEXIS 185397 (D.N.J. Sep. 27, 2021) ..................................2, 3

**Rules**

Local Rule 15.1 ................................................................................................15

## I. INTRODUCTION.

The Court should grant Defendants' motion to dismiss.[1] The Investment Claim simply cannot be reconciled with applicable precedent, chief among which is the Honorable Esther Salas's prior Opinion. *See Seibert v. Nokia of Am. Corp.*, 2023 U.S. Dist. LEXIS 137621 (D.N.J. Aug. 8, 2023). Incredibly, the opposition brief does not even *mention* the Opinion, much less attempt to harmonize the amended Investment Claim with the conclusions Judge Salas drew. For example, the opposition brief does not explain how the Morningstar Lifetime Moderate Index ("MLMI") can be considered a "meaningful benchmark" in light of Judge Salas's observation that a benchmark must be a like-kind investment. *See Mtn. Br.*, p. 16.

Similarly, the opposition brief does not dispute that the judicially noticeable documents attached to the Shapiro Cert. (to which Plaintiffs have posed no objection) confirm the dissimilarities between the Nokia TDFs and the FAC's alleged comparators from American Funds and T. Rowe Price. The opposition brief also ignores that Plaintiffs' counsel attacks the T. Rowe Price TDFs as *imprudent* investments in three other lawsuits. *Id.*, p. 17. Nor does the opposition brief dispute that Plaintiffs manipulated the FAC's paragraph 106 "performance chart" by plotting

---

[1] Unless otherwise defined, all shortened and abbreviated terms used in this reply brief have the same meanings given in Defendants' opening brief [Dkt. No. 66-1]. Defendants cite to their opening brief as "Mtn. Br." and to the opposition brief [Dkt. No. 67] as "Opp." All citations are to ECF page numbers.

returns of the Nokia TDFs *net* of expenses against returns of the purported comparators *without* considering expenses. *Id.*, p. 26. All the while, Plaintiffs ask the Court to overlook these blatant marks of implausibility by applying a more "holistic" analysis derived from interdicted case law.

To summarize, in efforts to salvage the Investment Claim from dismissal, the opposition brief: (1) ignores Judge Salas' Opinion and the law of the case doctrine; (2) manufactures a more lenient pleading standard; (3) ignores allegations Plaintiffs' counsel has made in other cases; (4) does not dispute the manipulation of data in the FAC; and (5) continues to rely on hindsight. By any metric, the FAC is implausible, and the Court should dismiss the Investment Claim with prejudice.

## II. LEGAL ARGUMENT.

### A. Judge Salas's Opinion is Controlling Law.

The opposition brief is conspicuous for its failure to mention the Opinion, which binds all subsequent stages of the litigation. *See Daramy v. AG of the United States*, 365 F. App'x 351, 354 (3d Cir. 2010). With respect to the Investment Claim, Judge Salas drew two pertinent conclusions.

First, "[p]laintiffs who rely on circumstantial evidence of imprudence must provide a sound basis for comparison – a meaningful benchmark – to show a prudent fiduciary in like circumstances would have selected a different fund." *Opinion*, at *14 (quoting *Young Cho v. Prudential Ins. Co. of Am.*, 2021 U.S. Dist. LEXIS

2

185397, at *20 (D.N.J. Sep. 27, 2021). A meaningful benchmark is a "similarly-situated investment option." *Id*. High-level aggregations such as the ICI Profile (and, as elaborated upon below, the MLMI) are not, by definition, "similarly-situated investment options." *See id*. at *14-15.

Second, even where plaintiffs proffer a meaningful benchmark, they cannot do so with the benefit of hindsight. *Id*. at *10 (citations omitted). Because hindsight is 20/20, it is *always* possible for a plaintiff to find another fund with better performance or lower costs. *See, e.g., Cho*, 2021 U.S. Dist. LEXIS 185397, at *26-27. Accordingly, "[a] plaintiff does not adequately plead a breach of the fiduciary duty of prudence by merely alleging that cheaper alternative investments with some similarities exist in the marketplace." *Opinion*, at *13-14 (citations omitted). Rather, the averments must give rise to a plausible inference that the fiduciary's *process* for investigating and selecting investments was flawed. *Id*. at *13 and *18.

These conclusions dictate that the Court must grant Defendants' motion.

### B. Plaintiffs Misstate the Standard of Review.

The opposition is replete with references to *Sweda v. Univ. of Pa.*, 923 F.3d 320 (3d Cir. 2019), which Plaintiffs cite for their contention that the Court should take a "holistic" approach on this motion, considering the "totality of the circumstances." *See Opp.*, p. 25-26. But *Sweda* has been displaced by *Hughes v.*

3

*Northwestern Univ.*, 142 S. Ct. 737 (2022).[2] *Hughes* instructs that a District Court's prudence analysis on a motion to dismiss must be "context-specific," which is the *opposite* of "holistic." *Id*. at 742. *Hughes* further instructs that the District Court must give "due regard" not to the "totality of the circumstances" but to the "range of reasonable judgments a fiduciary may make based on her experience and expertise," all the while recognizing that "at times, circumstances facing an ERISA fiduciary will implicate difficult tradeoffs." *Id*. Notably, while Judge Salas cited *Sweda* several times in the Opinion, she did *not* adopt the Third Circuit's "holistic approach."

Further, to the extent *Sweda* remains authoritative, Judge Salas has applied it already to the Investment Claim. Specifically, Judge Salas cited *Sweda* for its holding that, in assessing prudence, courts look to "process rather than results." *Opinion*, at *13 (citing *Sweda*, 923 F.3d at 329). Judge Salas further cited *Sweda* for the Third Circuit's concurrence that a meaningful benchmark must be a "specific" and "readily available" investment alternative. *Id*. at *19 (citing *Sweda*, 923 F.3d at 332). *Sweda* therefore requires the Court to assess whether the Investment Claim is based on a meaningful benchmark. The answer to that question here is ***no***.

---

[2] Tellingly, the opposition brief cites *amicus curiae* from *Hughes* discussing a now irrelevant prior circuit split regarding the sufficiency of a share class claim (which is not at issue here), while ignoring the *Hughes* decision itself for what the Supreme Court said regarding the applicable standard of review. *Opp.*, p. 10-11.

4

### C. The FAC Fails to Proffer a Meaningful Benchmark.

Like the Complaint that preceded it, with respect to costs, the FAC relies solely on the ICI Profile, which Judge Salas rejected as a meaningful benchmark. *See Opinion*, at \*14 ("[T]he ICI study does not constitute a meaningful benchmark and is insufficient to plausibly allege that the Committee's review of the Plan's investment portfolio was imprudent."). Plaintiffs do not dispute that the FAC's allegations of excessive costs are unchanged from the original Complaint, laying to rest any dispute over whether these allegations are plausible. *See Opp.*, p. 25-26.

With respect to investment performance, a meaningful benchmark is particularly necessary when dealing with TDFs, which, as the FAC acknowledges, differ widely in their structure and investment strategies. *See FAC*, ¶¶ 78-84; *Mtn. Br.*, p. 17-18; *see also Johnson v. Parker-Hannifin*, 2023 U.S. Dist. LEXIS 214747, at \*3 (N.D. Ohio Dec. 4, 2023) (describing differences among TDFs regarding investment strategies and glide paths). To show allegedly deficient performance, the FAC looks to three things: the MLMI, the American Funds TDFs, and the T. Rowe Price TDFs. More to the point, the FAC makes a (false) presumption that the Nokia TDFs, the American Funds TDFs, and the T. Rowe Price TDFs all fit neatly within the MLMI "peer group." These incongruent allegations fall well short of the plausibility threshold.

### 1. The MLMI is not a meaningful benchmark.

As noted above, a meaningful benchmark must be an *actual fund* into which a participant can put his savings in lieu of the challenged fund. Because the MLMI is not an *actual fund*, it cannot be a meaningful benchmark. *See Opinion*, at *14-15; *see also Parker-Hannifin*, 2023 U.S. Dist. LEXIS 214747, at *16 (rejecting the use of the S&P TDF index as a meaningful benchmark because an index "is not a fund but a statistical composite created from a universe of target date funds"). *See Hall v. Capital One Fin. Corp.*, 2023 U.S. Dist. LEXIS 35391, at *23-24 (E.D. Va. Mar. 1, 2023) (rejecting the S&P TDF index as a benchmark for the same reason, and further rejecting the Sharpe ratio as a benchmark); *Tullgren v. Hamilton*, 2023 U.S. Dist. LEXIS 34462, at *21 (E.D. Va. Mar. 1, 2023) (same).

Separately, on its own merits, the MLMI is not a meaningful benchmark to gauge the performance of a particular TDF. The MLMI is simply a Morningstar asset allocation model. *See* Morningstar Lifetime Allocation Indexes, available at https://indexes.morningstar.com/api/docs/64024ba7b7e0551080f68950#:~:text=Morningstar%20Indexes%20takes%20a%20glidepath,bearing%20assets%20such%20as%20bonds (last visited Jan. 21, 2024). Morningstar "lifetime" indexes (of which there are three: "aggressive," "moderate," and "conservative") track performance of the underlying *asset* classes that compose the model (e.g., domestic equity, emerging markets equity, domestic fixed income, etc.), but they do not track the performance

of individual funds that bear the peer group label. *See id.* So, for example, unlike the S&P 500, where the performance of an index stock like Apple will impact the performance of the index as a whole, the performance of a TDF assigned by Morningstar to the "moderate" peer group will not impact performance of the MLMI itself.

Additionally, much like the ICI Profile "does not describe how the individual funds used in the ICI study compare to the Plan's funds," *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1154-55 (10th Cir. 2023), the FAC does not explain how the MLMI's component asset classes compare to those of the Nokia TDFs. *See Parker-Hannifin*, 2023 U.S. Dist. LEXIS 214747, at *16. As Defendants have pointed out, while the Nokia TDFs' equity holdings are (roughly) evenly-split between domestic and foreign stocks, the MLMI's domestic equity allocation exceeds foreign equity allocation by nearly twenty percentage points. *See Mtn. Br.*, p. 21. The MLMI's bond allocation also exceeds that of the Nokia TDFs by nearly seven percentage points. *See id.*

Although Plaintiffs aver that the MLMI is "used by virtually all target date series for large retirement plans such as the Plan and would be applicable to the [Nokia TDFs]," they cite no factual support for this bald statement. *See FAC*, ¶ 100; *Opp.*, p. 13. Indeed, Plaintiffs contradict their own point when they acknowledge that the Nokia TDFs, because they are customized, are *not* categorized by

7

Morningstar. *See FAC*, ¶ 100 ("Since the [Nokia TDFs] are not publicly available, they're not categorized by Morningstar."); *Opp.*, p. 13 (same). As Defendants have noted, Nokia provided Plaintiffs with access to their TDFs' Fund Fact Sheets prior to their filing this lawsuit. *See Mtn. Br.*, p. 29-30. Yet, Plaintiffs did not proffer a TDF with the same or similar characteristics as the Nokia TDFs.[3]

Nor does the opposition brief explain what the purported "core similarities" are between the proprietary Nokia TDFs, on the one hand, and funds assigned to the MLMI category, on the other. *Opp.*, p. 18. Contrary to Plaintiffs' assertion, the two are decidedly *dissimilar*. As noted above, the stock-bond ratios and the foreign-domestic equity splits between the MLMI asset allocation and the Nokia TDFs' asset allocations are drastically different. Plaintiffs do not refute Defendants' argument that, because divergent equity structures drive disparate investment returns based on different market conditions, a fund's balance of foreign and domestic stock holdings will necessarily impact performance. *See Mtn. Br.*, p. 17-18.

---

[3] Plaintiffs' access to this information discredits the opposition brief's boilerplate allegation that Plaintiffs' "lack the inside information necessary to make out their claims in detail." *Opp.*, p. 9.

8

For a contrary point, the opposition brief relies almost entirely upon five opinions, all but one of which (*Gaines*) is a pre-*Hughes* opinion. Substantively, none are persuasive.[4]

*Brotherston v. Putnam Invs. LLC*, 907 F.3d 17 (1st Cir. 2018), is far afield. *Brotherston* involved an appeal of a defense judgment as a matter of law following plaintiffs' presentation of their case-in-chief in a bench trial. Plaintiffs' expert endeavored to quantify loss by comparing the returns of the challenged funds to the returns of certain funds in the same Morningstar *peer group*, not to any Morningstar *index*. See *id*. at 32.[5] But because the District Court dismissed the case after plaintiffs' case-in-chief, it never heard a competing loss theory from the defendant. The First Circuit found the District Court's ruling to be in error, but it also observed: "That is *not* to say [plaintiff's expert] necessarily picked suitable benchmarks, or calculated the returns correctly, or focused on the correct time period." *Id*. at 34 (emphasis added). The First Circuit simply reversed and remanded for the District

---

[4] Ironically, Plaintiffs brush aside any substantive out-of-circuit opinion Defendants cite (*see Opp.*, p. 19, 23, 25), yet rely *only* on out-of-circuit authority to support their contention that they proffer meaningful benchmarks.

[5] The opposition brief deviates from the FAC in that the FAC relies upon comparisons to the MLMI, whereas the opposition brief focuses on comparisons to Morningstar "peer group" funds. It goes without saying that Plaintiffs cannot rely on the opposition brief to amend or supplement the FAC. *See Swift v. Pandey*, 2013 U.S. Dist. LEXIS 162029, at *8 (D.N.J. Nov. 13, 2013). But even if the Court takes the opposition brief's arguments at face value, Plaintiffs' case becomes even weaker given that the Nokia TDFs are *not* in any Morningstar peer group.

Court to reconsider these issues of fact. *See id.* Stated simply, *Brotherston* had nothing to do with the MLMI as a meaningful benchmark.

*Snyder v. UnitedHealth Grp., Inc.*, 2021 U.S. Dist. LEXIS 230878 (D. Minn. Dec. 2, 2021), is equally off the mark. Like *Brotherston*, *Snyder* involved a comparison of the challenged funds to funds in the same Morningstar peer group, not to any Morningstar index. Since the challenged TDFs and the comparator TDFs were all classified by Morningstar in the same peer group, the District Court found the comparison plausible. *See id.* at \*11. Here, by contrast, the Nokia TDFs are not categorized by Morningstar. *See FAC*, ¶ 100; *Opp.*, p. 13

*Gaines v. BDO USA, LLP*, 2023 U.S. Dist. LEXIS 47350 (N.D. Ill. Mar. 21, 2023), is similarly inapposite because it too involved a comparison of funds in the same Morningstar peer group, not a comparison of the challenged funds to the MLMI specifically. *Id.* at \*16. Plaintiffs' complaint also proffered *twenty* like-kind comparators in the same peer group to demonstrate deficient performance of the challenged funds. *Id.* Clearly, the allegations in this case are not comparable, as Plaintiffs simply cherry-picked two funds that happened to be classified by Morningstar as "moderate" TDFs and which, in the end, are dissimilar to the Nokia TDFs.

*Brown-Davis v. Walgreen Co.*, 2020 U.S. Dist. LEXIS 252317 (N.D. Ill. Mar. 16, 2020), is likewise unhelpful. While plaintiffs in *Brown-Davis* did compare the

challenged TDFs to the MLMI, as in *Snyder* and *Gaines* the plaintiffs also juxtaposed the challenged TDFs with like-kind comparators. *Id.* at *10. The District Court also devoted no substantive attention to the MLMI as a benchmark, mentioning it only once in passing. Further, two years after *Brown-Davis* the Seventh Circuit concluded that a "meaningful benchmark" must be a like-kind investment alternative with similar investment strategies. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 581-82 (7th Cir. 2022). *Brown-Davis* would therefore likely be decided differently under the now controlling standards of *Oshkosh*.

Finally, there is *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678 (E.D. Mich. 2021), which referenced a Morningstar index, but only as a supplement to several other competent comparators. *Id*. at 687. In any event, *Dover* too has since been interdicted by the Sixth Circuit's opinion in *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022). In *CommonSpirit*, which involved a challenge to the prudence of Fidelity's TDFs, the Sixth Circuit clarified that a "meaningful benchmark" is an alternative fund with the same investment strategy. *See id*. at 1167; *see also Parker-Hannifin*, 2023 U.S. Dist. LEXIS 214747, at *15 (citing *CommonSpirit* for proposition that a meaningful benchmark is a "comparator fund" that shares the same "investment strategies, risk profiles, and objectives").

11

In sum, none of the authorities Plaintiffs proffer in support of their use of the MLMI as a benchmark bring the Investment Claim any closer to plausibility.

### 2. The American Funds and T. Rowe Price TDFs are not meaningful benchmarks.

"Just as comparison can be the thief of happiness in life, so it can be the thief of accuracy when it comes to two funds with separate goals and separate risk profiles." *CommonSpirit*, 37 F.4th at 1167. This observation is particularly apt here, given Plaintiffs' acknowledgment that, when it comes to TDFs, the asset allocation (glide path) drives performance. *FAC*, ¶¶ 82, 84. Yet, as with the MLMI, the FAC does not contain a single sentence describing how the glide paths or investment strategies of the T. Rowe Price or the American Funds TDFs compare to those of the Nokia TDFs. Instead, Plaintiffs aver generally that the American Funds TDFs and T. Rowe Price TDFs "are suitable comparator funds…because Morningstar, the most well-respected and accepted financial industry fund database[,] places the funds in the [MLMI] category." *Opp.*, p. 17-18. This assertion is not only incorrect, it flat out contradicts the FAC's acknowledgment that, "[s]ince the [Nokia TDFs] are not publicly available, they're *not categorized by Morningstar*." *FAC*, ¶ 100 (emphasis added).

But even if the Court assumes *arguendo* that the Nokia TDFs share some similarities with the American Funds and T. Rowe Price TDFs, that by itself is insufficient to deem those funds meaningful benchmarks. Plaintiffs concede that all

12

TDFs have different asset allocations. *See Opp.*, p. 20. The differences here are stark. Plaintiffs do not dispute, for example, that the equity component of the Nokia TDFs is approximately 45% U.S. stocks, whereas the comparator TDFs are invested approximately 60% in U.S. stocks. *Mtn. Br.*, p. 20-21. The fixed income components are also different. For example, the 2040 Nokia TDF's present allocation is 10.73% bonds; for the 2040 American Funds TDF that number increases to almost 14%; and for the 2040 T. Rowe Price TDF that number decreases to 7.84%. *See id.*, p. 21. Contrary to Plaintiffs' assertion, these are not "minor variations." *Opp.*, p. 19. These variations drive performance.

Thus, even if there were a basis to credit Plaintiffs' unsupported assertion that the Nokia TDFs, the American Funds TDFs, and the T. Rowe Price TDFs are "peers," with so little detail in the FAC, Plaintiffs' pleading fails to support an inference that these comparisons are sound. *See Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022). Among the missing details is whether the comparator funds hold similar securities, have similar investment strategies and glide paths, and reflect a similar risk profile to the Nokia TDFs. *Id.* If any of these characteristics are different from the Nokia TDFs (and the documents attached to the Shapiro Cert. confirm that they are), Plaintiffs' "peer group" argument fails and their allegations are not plausible.

### D. The Investment Claim is Hindsight-Based and Focuses Improperly on Isolated Periods of Performance.

Following dismissal of the Investment Claim in the original Complaint, Plaintiffs did nothing more than find two funds that allegedly outperformed the Nokia TDFs over a three-year period. *See Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice at the outset."). The FAC contains no allegations to support an inference that, during the Class Period, the Committee had reason to know that the Nokia TDFs were so materially out-of-step with the broader market that a reasonably prudent fiduciary would have divested. *See Baumeister v. Exelon Corp.*, 2023 U.S. Dist. LEXIS 175326, at *12 (N.D. Ill. Sep. 29, 2023). Self-evidently, the FAC's Investment Claim is based on pure, unabashed hindsight.

The Investment Claim also focuses upon an isolated three-year performance window. By their nature, however, TDFs are designed to be held for the long-term. "Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision[.]" *CommonSpirit*, 37 F.4th at 1166. As Plaintiffs' own case citations reflect, imprudence is gleaned from performance over extended periods of time. *See Snyder,* 2021 U.S. Dist. LEXIS 230878 at *10 (sustaining allegations of underperformance over an eleven-year

14

period). Accordingly, even if the Court overlooks the troubling poetic license Plaintiffs took in drafting the FAC's performance chart by comparing gross returns to net returns, and by failing to include full performance lines for the Nokia TDFs, their focus on a three-year window in isolation is insufficient to demonstrate imprudence.[6]

### E. The Court Should Dismiss the Investment Claim With Prejudice.

The Court should deny Plaintiffs' passing request for leave to amend (again) and dismiss the Investment Claim with prejudice. Plaintiffs have not filed a proper motion or submitted a proposed amended complaint in accordance with Local Rule 15.1. An opposition brief is not an appropriate means to request leave to amend. *Breen v. Callagy Law PC*, 851 F. App'x 302, 305 (3d Cir. 2021). Furthermore, the Court should not slow the progress of the Recordkeeping Claim (on which the parties are currently engaged in discovery) while Plaintiffs think of new ways to pair it with a contrived Investment Claim.

## III. CONCLUSION.

For the reasons set forth above and in Defendants' opening brief, the Court should dismiss the Investment Claim with prejudice.

---

[6] This is not the first time Plaintiffs have taken such poetic license. Although Judge Salas sustained the Recordkeeping Claim for other reasons, she found "troubling" Plaintiffs' apparent inflation of the amount of fees the recordkeeper allegedly received, which did not align with public documents. *See Opinion*, at *38, n.11.

Respectfully submitted,
JACKSON LEWIS P.C.

/s/  *Howard Shapiro*
     *Michael E. Holzapfel*
Howard Shapiro, Esq. (admitted *pro hac vice*)
Michael E. Holzapfel, Esq. (031022002)

Dated: January 26, 2024

4856-3688-5151, v. 1

16